[Cite as *State v. Smith*, 2013-Ohio-746.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  8-12-05

    v.

JUSTIN DEAN SMITH,                  **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Logan County Common Pleas Court
Trial Court No. CR 11-12-0247

**Judgment Affirmed**

**Date of Decision:   March 4, 2013**

APPEARANCES:

    *Natalie J. Bahan* **for Appellant**

    *William T. Goslee and Daniel J. LaRoche*   **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Justin Smith, appeals the judgment of the Court of Common Pleas of Logan County convicting him of felonious assault. On appeal, Smith argues that the trial court erroneously excluded evidence regarding his claim of self-defense. He also contends that the trial court erred in issuing confusing jury instructions and verdict forms. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On January 10, 2012, the Logan County Grand Jury indicted Smith on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree. The indictment arose from a November 7, 2011 incident in which Smith allegedly beat Carl Stevenson.

{¶3} On May 15, 2012, the State filed a motion in limine to exclude certain evidence, including evidence relating to specific instances of conduct by Stevenson. The trial of this matter also commenced on May 15, 2012 and concluded the next day. For the purposes of this appeal, the following relevant evidence was adduced at trial.

{¶4} Stevenson testified to the alleged assault, which he said included multiple blows to his head that caused him to lose consciousness. As a result of the beating, Stevenson said he suffered significant injuries, including multiple broken and shattered bones on his face, which necessitated 12 days in the hospital.

He further indicated that his injuries forced him to go onto life support and to endure major reconstructive surgeries to his eye sockets and sinuses. Stevenson also said that he was still suffering from serious pain at the time of the trial.

{¶5} Viola Davis, Stevenson's neighbor, testified regarding her observations of the alleged beating. She indicated that she saw Smith kick Stevenson in the head approximately 15 to 20 times. However, Davis also acknowledged that she did not see the start of the altercation.

{¶6} Smith testified in his own defense. He asserted that Stevenson initiated the attack and that he was carrying a knife.[1] He also testified at various times to Stevenson's nature. One such exchange occurred as follows:

> Q: All right. Throughout this friendship with [Stevenson], what are some things that kind of came to be solidified in your minds in terms of his behavior?
>
> A: He would go off on rants. Say stuff. Do things. Just – we called him Crazy Carl. That's his nickname on the street. I'm Smitty; he was Crazy Carl.
>
> Q: When you say "go off on a rant," like yelling at you?
>
> A: Not all the time. But things that had happened in his past, people that had crossed him, things like that. I mean, I'll give you an example. A guy threw a cat over the bonfire at me and it landed on my face, and when I pulled the cat off it scratched me all down my face and I was bleeding. Well, a few weeks later – a few days later, I don't remember exactly, but [Stevenson] told me after we all left he threw that cat in the fire. Those – these kind of rants.

---

[1] The investigating officers testified that they did not find any knives when they searched the outside of Stevenson's property, where the alleged beating occurred.

Q: Just to be mean?

A: Yes.

Q: And did he ever threaten you when he was doing this ranting?

A: Yeah. I mean, when I was working on his house, he had knives stuck around the doorways, from the front door, back door. He's just wronged so many people in his life and he's paranoid. Trial Tr., p. 207-08.

{¶7} This line of questioning continued, but the State objected when Smith's counsel asked, "[W]hat are things that he's told you that led you to believe he's hurt someone?" The basis for the objection was that Smith could not testify to specific instances of Stevenson's conduct. The trial court sustained the objection and the questioning continued as follows:

Q: [Smith], when [Stevenson] is ranting and yelling at you and saying all these things to you, was it usually directed at you personally or was he just mad about something else?

A: It depended on what he was talking about at the time. There was times that he told if I ever f[-----] with him he would f[------] cut me up. Trial Tr., p. 209.

At this point, the trial court sustained an objection and ordered the jury to disregard Smith's response.

{¶8} Again, the testimony continued:

Q: Has [Stevenson] ever threatened you?

A: Yes. Many times over the years. But that was just [Stevenson]. I never thought that he would act on them. I knew he was cable [sic], but I never thought he would actually do it.

* * *

Q: But did you think that if you ever did cross him that he would do the things he threatened?

A: Absolutely.

Q: Did he threaten to get you – to come after you with any weapon?

A: Yeah. He said he wouldn't fight me, he would use a weapon.

Q: Like what?

A: A knife. Trial Tr., p. 210.

The State again objected and the trial court sustained the objection. Later in his testimony, Smith stated that Stevenson "had knives everywhere in his house [and] bragged to me about how he sliced several people up and let me know several times that he would slice me up." Trial Tr., p. 249.

{¶9} After the close of evidence and arguments, the trial court instructed the jurors as follows:

The Defendant is charged with felonious assault. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 7th day of November, 2011, and in Logan County, Ohio, the defendant knowingly caused serious physical harm to another.

* * *

> If you find that the State has not proven all of the elements of felonious assault beyond a reasonable doubt you must return a verdict of not guilty. If the State has proven all of the elements of felonious assault beyond a reasonable you shall consider the affirmative defenses. (Docket No. 42, p. 4-5).

The instructions then go on to discuss Smith's assertion of self-defense and the

lesser offense of aggravated assault as follows:

> The Defendant claims to have acted in self-defense. To establish a claim of self-defense, the defendant must prove by the greater weight of the evidence that
> (a) he was not at fault in creating the situation giving rise to the event; and
> (b) he had reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm, and that his only reasonable means of retreat, escape or withdrawal from such danger was by the use of deadly force; and
> (c) he had not violated any duty to retreat, escape or withdraw to avoid the danger.
>
> * * *
>
> If you find that the Defendant has proven by a preponderance of the evidence all the elements of self-defense, then you must return a verdict of not guilty to the charge of felonious assault. If however, you have found that the State has proven all of the elements of felonious assault and the Defendant has failed to prove by a preponderance of the evidence all the elements of self-defense, then you will consider further the affirmative defense of an inferior offense known as aggravated assault.
>
> The defendant claims that at the time of the offense, he acted knowingly while under the influence of such sudden passion or in a sudden fit or rage, either of which was brought on by serious

provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force.

\* \* \*

If you find that the state proved beyond a reasonable doubt that the defendant knowingly caused serious physical harm to another and you find that the defendant failed to prove by the greater weight of the evidence that he acted while he was under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of felonious assault.

If you find that the State proved beyond a reasonable doubt that the defendant knowingly caused serious physical harm to another, but you also find that the defendant proved by the greater weight of the evidence that he acted while under the influence of sudden passion or in a sudden fit or range, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of aggravated assault.  (*Id*. at 5-8).

{¶10} Additionally, the trial court issued a verdict form for the use of the jurors that stated, "We, the Jury, duly impaneled and sworn and affirmed, do hereby find the Defendant [guilty/not guilty] of felonious assault in Count One of the indictment."  (Docket No. 44).

{¶11} On May 16, 2012, the jury returned a guilty verdict on the sole charge of felonious assault.  The trial court then proceeded to sentence Smith to six years in prison on May 31, 2012.

{¶12} Smith timely appealed the trial court's judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRONEOUSLY APPLIED THE WRONG STANDARD IN DETERMINING THE ADMISSIBILITY OF DEFENDANT-APPELLANT'S TESTIMONY AND EVIDENCE THAT WAS AN ESSENTIAL ELEMENT OF HIS AFFIRMATIVE DEFENSE, TO WIT: SELF-DEFENSE.**

*Assignment of Error No. II*

**THE JURY INSTRUCTIONS AND VERDICT FORMS WERE CONFUSING SUCH THAT THE JURY WAS UNABLE TO COME TO ANY CONCLUSION OTHER THAN GUILTY TO FELONIOUS ASSAULT.**

*Assignment of Error No. I*

{¶13} In his first assignment of error, Smith argues that the trial court erred in precluding him from testifying to Stevenson's specific acts of conduct. We agree but find no prejudicial error.

*Standard of Review*

{¶14} An appellate court reviews the trial court's decision on the admission of evidence for an abuse of discretion. *State v. Heft*, 3d Dist. No. 8-09-08, 2009-Ohio-5908, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v.*

*Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 16-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *State v. Nagle*, 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Evid.R. 404 and 405*

**{¶15}** Evid.R. 404 and 405 govern the introduction of character evidence. This matter implicates Evid.R. 404(A)(2), which provides, in pertinent part, as follows:

> (A) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
>
> * * *
>
> (2) Character of the victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, * * *.

Further, any evidence that is admissible pursuant to Evid.R. 404(A)(2) may only be offered in accordance with the following dictates of Evid.R. 405:

> (A) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowed into relevant specific instances of conduct.

(B)    Specific instances of conduct.  In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of conduct.

*Self-Defense and the Victim's Character*

{¶16} Smith asserted self-defense to avoid conviction.  To establish self-defense, the defendant must show the following: (1) that he was not at fault in causing the altercation; (2) that he "had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was" the use of force; and (3) that he did not violate the duty to retreat or avoid danger.  *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002), citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

{¶17} Before addressing the facts of this matter, we must resolve the proper interpretation of Evid.R. 405 in the context of a self-defense claim.  The State argues that the Ohio Supreme Court's holding in *Barnes* indicates that a defendant cannot offer proof of specific instances of the victim's character to prove the defendant's state of mind at the time of the offense.  In *Barnes*, the inquiry was couched as "whether a defendant who asserts self-defense may introduce evidence of specific instances of conduct by the victim to show that the victim was the initial aggressor * * *." *Id.* at 21.  On this issue, the Court narrowly held that "[a] defendant asserting self-defense cannot introduce evidence of specific instances of

a victim's conduct to prove that the victim was the initial aggressor." *Id*. at syllabus. The narrow nature of the holding is confirmed by the Court's note that "[w]e express no opinion here as to whether evidence of specific instances of a victim's conduct is admissible for other purposes in a self-defense case." *Id*. at fn. 3. Notwithstanding this language, the dissenting justice characterized the majority's opinion as having a far wider impact:

> Although the majority claims to leave open the issue of whether testimony of specific instances of conduct is admissible to show a defendant's state of mind, it has, in effect, resolved that question, too. While a defendant's state of mind is an element of a self-defense case, that element does not *require* proof of the victim's character or character traits. Thus, under today's holding, evidence of specific conduct would also be inadmissible in that context * * *. (Emphasis sic.) *Id*. at 29 (Pfeifer, J., dissenting).

{¶18} Despite the dissent's characterization, the majority expressly left this issue unresolved. As a result, even after *Barnes*, we have interpreted Evid.R. 405 as permitting a defendant to "testify about specific instances of the victim's prior conduct known to the defendant in order to establish the defendant's state of mind." *State v. Moore*, 3d Dist. Nos. 1-06-89, 1-06-96, 2007-Ohio-3600, ¶ 59; *see also State v. Cooperider*, 3d Dist. No. 9-03-11, 2003-Ohio-5133, ¶ 11 ("[A] defendant * * * may testify about specific instances of prior violent conduct by the victims to establish the defendant's state of mind at the time of the incident.").

Other courts have also reached the same conclusion post-*Barnes*.[2]  *E.g.*, *In re D.N.*, 195 Ohio App.3d 552, 2011-Ohio-5494, ¶ 15 (8th Dist.); *State v. Krug*, 11th Dist. No. 2008-L-085, 2009-Ohio-3815, ¶ 60; *State v. Salyers*, 2d Dist. No. 20695, 2005-Ohio-2772, ¶ 32; *State v. Davis*, 5th Dist. No. 2003 CA 429, 2004-Ohio-7056, ¶ 19; *State v. Mason*, 6th Dist. Nos. L-02-1189, L-02-1211, 2003-Ohio-5974, ¶ 36.  As a result, we find that *Barnes* does not mandate that we cast aside our previous interpretation of Evid.R. 405 as allowing the defendant's testimony regarding a victim's specific instances of conduct to prove the defendant's state of mind at the time of the alleged assault.

{¶19} Here, Smith attempted to testify about his knowledge of Stevenson's death threats towards him and towards others.  He offered the testimony to establish his state of mind, i.e., that he was fearful of Stevenson at the time of the incident and that he believed he was in imminent danger.  As such, Smith offered evidence that was admissible under Evid.R. 405(B).

*Harmless Error*

{¶20} This finding, however, does not end our inquiry since a trial court's Evid.R. 405(B) ruling is subject to harmless error analysis.  *See Salyers* at ¶ 33 (finding that the trial court's erroneous exclusion of Evid.R. 405(B) evidence was

---

[2] We note that the State has not cited, and we have not found, any case in which the court precluded evidence of a victim's specific instances of conduct to prove the defendant's state of mind at the time of the incident.

harmless). The improper exclusion of evidence is harmless where the remaining evidence provides overwhelming proof of a defendant's guilt. *State v. Murphy*, 91 Ohio St.3d 516, 555 (2001). When performing harmless error analysis, an error is deemed harmless if it did not affect the defendant's "substantial rights." Crim.R. 52(A). An error does not affect substantial rights if "there is no reasonable probability that the error contributed to the outcome of the trial." *State v. Thomas*, 3d Dist. Nos. 1-11-25, 1-11-26, 2012-Ohio-5577, ¶ 40, citing *State v. Brown*, 65 Ohio St.3d 483, 485 (1992).

{¶21} Here, the State offered overwhelming evidence of Smith's guilt, including the testimony of both Stevenson, who testified to the beating that Smith inflicted upon him, and Davis, who corroborated Stevenson's version of events with her own eyewitness testimony. Further, while the trial court did order jurors to disregard Smith's testimony as to the specific contents of Stevenson's threat and precluded Smith from testifying regarding some of Stevenson's threats of violence, there was a variety of other testimony about specific instances of Stevenson's conduct. In particular, Smith testified that Stevenson had previously threatened him, that Stevenson had previously discussed cutting people, and that Stevenson had a negative reputation. As a result, the jury heard significant testimony as to Stevenson's previous conduct and his reputation, rendering the

exclusion of some of Smith's testimony about the subject to be essentially meaningless.

{¶22} Moreover, even with the additional evidence, we are unable to find that the jurors would have determined that the elements of self-defense were satisfied. Smith essentially admitted that he used force that was greater than reasonably necessary by testifying that he "beat the hell out of [Stevenson]," trial tr., p. 220, and acknowledging that his actions went too far. Also, Smith testified that he was able to force the knife out of Stevenson's hand early in the scuffle between the two, which indicates that the alleged threat posed by Stevenson was removed before Smith delivered the brunt of the beating.

{¶23} In sum, we find that the trial court's improper exclusion of some of Smith's testimony about Stevenson's previous conduct was harmless.

{¶24} Accordingly, we overrule Smith's first assignment of error.

*Assignment of Error No. II*

{¶25} In his second assignment of error, Smith contends that the trial court issued jury instructions and verdict forms that were confusing to the jury. Specifically, he claims that the jury instructions and the verdict form suggest that once the jurors found him guilty of felonious assault, they did not need to consider self-defense or aggravated assault. We disagree.

**{¶26}** We preliminarily note that Smith has not cited any legal authorities supporting his argument. This is in violation of App.R. 16(A)(7), which requires that the appellant provide "[a]n argument containing the contentions of the appellant * * * with citations to the authorities * * * on which appellant relies." Although App.R. 12(A)(2) gives us the authority to disregard this deficient assignment of error, we will address its merits in the interests of justice. *See State v. Galbraith*, 3d Dist. No. 9-11-61, 2012-Ohio-5231, ¶ 15.

*Standard of Review*

**{¶27}** Smith did not object to the jury instructions or verdict form at trial. As a result, he has waived all but plain error. *State v. Nielsen*, 66 Ohio App.3d 609, 611 (6th Dist. 1990). To have plain error under Crim.R. 52(B), there must be an error that both constitutes an "obvious" defect in the trial proceedings and affects "substantial rights." *State v. Barnes*, 94 Ohio St.3d at 27. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *State v. Biros*, 78 Ohio St.3d 426, 436 (1997); *see State v. Johnson*, 3d Dist. No. 2-98-39 (June 30, 1999).

**{¶28}** "If taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be

-15-

found merely on the possibility that the jury may have been misled." *State v. Tvaroch*, 11th Dist. No. 2012-T-0008, 2012-Ohio-5836, ¶ 21. Instead, "misstatements and ambiguity in a portion of the instructions" only give rise to a reversal where "the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." *State v. Haller*, 3d Dist. No. 1-11-34, 2012-Ohio-5233, ¶ 43, quoting *State v. Farr*, 3d Dist. No. 13-06-16, 2007-Ohio-3136, ¶ 14.

*Ohio Jury Instructions*

{¶29} The Ohio Jury Instructions ("OJI") provides the following template for a felonious assault charge: "The defendant is charged with felonious assault. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the __ day of __, __, and in __ (County), Ohio, the defendant knowingly caused serious physical harm to (insert name of victim)." OJI, CR 503.11(A)(1). It also includes the following standard instruction for aggravated assault: "The defendant claims that at the time of the offense, he/she acted knowingly while under the influence of sudden passion or in a sudden fit or rage, either of which was brought on by serious provocation occasioned by (insert name of victim) that was reasonably sufficient to incite the defendant into using deadly force." OJI, CR 503.11(A)(11)(B).

**{¶30}** Moreover, the Ohio Jury Instructions suggests the following language for a self-defense instruction:

> The defendant claims to have acted in self-defense. To establish a claim of self-defense, the defendant must prove by the greater weight of the evidence that
> (A) he/she was not at fault in creating the situation giving rise to (describe event in which death or injury occurred); and
> (B) he/she had reasonable grounds to believe and an honest belief, even if mistaken, that he/she was in (imminent) (immediate) danger of death or great bodily harm, and that his/her only reasonable means of (retreat) (escape) (withdrawal) from such danger was by the use of deadly force; and
> (C) he/she had not violated any duty to (retreat) (escape) (withdraw to avoid the danger). OJI, CR 421.19(2).

*The Trial Court's Instructions*

**{¶31}** Here, the trial court's instructions closely track the suggested language of the Ohio Jury Instructions, which suggests their accuracy and comprehensibility. Despite this, Smith claims that the instructions are confusing because the trial court "instructed [the jury] to find [Smith] guilty of felonious assault before it was even asked to consider [Smith's] affirmative defenses of self-defense and inferior [offense] of aggravated assault." Appellee's Br., p. 9. However, a mere cursory review of the trial court's instructions contradicts Smith's characterization. The jurors were instructed to first consider whether the State had proven all of the elements of felonious assault beyond a reasonable doubt. If they found that the State had carried its burden, the trial court instructed

the jurors to then consider whether Smith carried his burden as it related to his affirmative defenses. Only upon a consideration of these affirmative defenses was the jury instructed to return a verdict of guilty or not guilty.

{¶32} Smith also argues that it would be more appropriate for the trial court to state its instructions on the affirmative defense of self-defense and lesser offenses before stating its instructions regarding the elements of felonious assault. But, he has not cited, and we are unable to find, any case that has required such an instruction. Indeed, such an instruction would be contrary to the order suggested in the Ohio Jury Instructions, *see* OJI, CR 503.11(A), and it would be illogical based on the treatment of affirmative defenses under Ohio law, *see State v. Martin*, 21 Ohio St.3d 91, 94 (1986) (noting that "affirmative defenses * * * do not seek to negate any of the elements of the offense which the State is required to prove" but rather they "admit[] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability"). As such, we decline to require that trial courts instruct jurors on affirmative defenses before instructing them on the elements of the charged offense.

*Verdict Form*

{¶33} The verdict form issued to the jury was self-explanatory. Upon its consideration of the evidence and its adherence to the trial court's instructions, the

jury was ordered to fill in the verdict form with its finding. Such a form was simple, not confusing, and non-prejudicial to Smith.

{¶34} Since neither the jury instructions nor the verdict form were confusing or legally inaccurate, we overrule Smith's second assignment of error.

{¶35} Having found no error prejudicial to Smith, in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**